STATE, WASHINGTON BUILDING AND LOAN ASSOCIATION, PROSECUTOR, PLAINTIFF IN ERROR, v. JOHN HORNBACKER, COLLECTOR, &c., DEFENDANT IN ERROR.

1. The property of loan and building associations is assessable under the supplement to the act concerning corporations, approved March 7th 1878, like that of individuals, at its full and actual value.
2. An assessment of the property of such a corporation was made, based upon the annual report of the company, exhibiting its financial condition, from which the personal estate appeared to be $120,787.51, after deducting the value of the real estate, no statement of the taxable property having been furnished to the assessor, as required by law. *Held*—That the corporation was properly assessed for the bonds, mortgages and notes held by it, for the sums named in them, and as aggregated in the report of the secretary.
3. The corporation having failed to exhibit, clearly and accurately, to the assessor or to the commissioners of appeals, the true particulars of its property subject to taxation, is not entitled to relief in this court. *State, Cosset, pros.*, v. *Reimenschneider*, 10 *Vroom* 625, approved.

On error to the Supreme Court. For opinion of the Supreme Court, see 12 *Vroom* 519.

For the plaintiff in error, *O. Jeffrey* and *H. C. Pitney*.

For the defendant in error, *J. M. Van Dyke*.

The opinion of the court was delivered by

DODD, J.   The *certiorari* in this case brings up a tax of $1882.50, assessed for the year 1878, against the Washington Building and Loan Association, in the borough of Washington and county of Warren.   The association is a corporate body, and, under the act relating to corporations, approved March 7th, 1878, (*Pamph. L.*, *p.* 61,) its property, like that of an individual, is to be taxed at its full and actual value.   The prosecutors complain that there has been an overvaluation of the property taxed.   It is described in the duplicate of the assessor as personal estate, and valued as of May 20th, 1878, at the sum of $120,700.   This amount was taken by the assessor from the company's annual report, made by its secretary for the purpose of exhibiting its financial condition at the close of the year 1877.   The net assets, as stated in this report, are $125,587.51, including real estate valued at $4809.52.   Deducting the real estate, as to which no question is made, there remains the personal estate, amounting to $120,787.51.   It was not claimed by the prosecutors that this estate was less valuable on the 20th of May, 1878, the date of the assessment, than it was at the date of the report, but it was claimed that the assessor, in adopting the valuation contained in the report, mistook the nominal or face value of the obligations which the company, held for the true one; that the true value should now be ascertained, and the amount of the tax correspondingly reduced.

The personal estate is not set out in the report in detail, but agrregated under the heads of bonds, mortgages, notes, and arrears.   The company furnished no statement of its taxable property to the assessor, and made no application

to the commissioners of appeals to have the assessment, of which they were notified, changed.

Waiving the omission of the prosecutors to apply for relief, in the first instance, to the commissioners of appeals, the question occurs—which was discussed at the argument—are the obligations included in the personal estate to be taken as good for the sums named in them, and aggregated in the secretary's report? I think that they are.

The company was incorporated under "An act to encourage the establishment of mutual loan and building associations," approved February 28th, 1849. In pursuance of this act, its constitution provides for the formation of capital stock not exceeding one thousand shares, the full value of each share to be $200, to be paid in monthly instalments of $1 each, stockholders to sign the constitution, and, on the first monthly payment on the stock, to receive as evidence of title to their shares, a certificate, attested by the president and secretary, which, like stock certificates generally, are transferable on the company's books. Whenever the value of each share shall be found by the directors to reach $200, from moneys paid in, a meeting of the stockholders is to be convened, and the company brought to a close. The owner of each share of stock is then to receive $200 in cash, or, if he shall happen to be a borrower from the company, instead of money, he is to receive his own obligations, given for the sum he has borrowed.

If the company's funds be not borrowed by stockholders, they are loaned to strangers. The amount permissible for a stockholder to borrow is limited to $200 for each share he may own. As security for the loan, he gives to the company his bond, secured by such mortgage as the directors may require. He also assigns, as collateral to his bond, his shares of capital stock. The bonds and mortgages so given are the obligations whose character and value have been the matters in dispute in this cause. The counsel of the prosecutors, while differing in their views as to the principles and methods on which the amounts of these obligations should be computed,

agree in denying that they stand good for the full principal sums loaned to the obligors, and named as such principal in the bonds. The unsoundness of the argument in-support of this denial, consists in not observing the distinct and separate existence of the stock, on the one hand, and the bond on the other—the distinct and separate relation borne to the company, on the one hand, by its stockholder, and on the other by its borrower. A connection is sought to be established between the stock held by the stockholder and the bond held by the company, by virtue of which, as payments are made on the stock, they are to be treated as payments on the bond, so that one steadily merges in or becomes offset by the other. But while, in a general way, this view may seem fair, because an exchange of one for the other is the result expected to happen, it is still not the view warranted by the terms of the company's constitution, nor by the terms of the bond. By the condition of the bond, the borrower is to pay interest monthly, on the principal borrowed, at the rate of six per cent. per annum. No time is named for the payment of the principal, because if the borrower, in addition to the interest, pays also the monthly instalments on the stock, he cannot be compelled to pay the principal in cash, but may, when his stock becomes paid up, exchange his stock for such principal debt. This is so provided in the condition of the bond. But until so exchanged, they are distinct in legal contemplation as well as in form. The stock is a collateral security for, and not a credit on, the bond. There is nothing to prevent the borrower from paying the principal, if he pleases, and taking up his hypothecated shares. By the condition of the bond, if the interest remain unpaid for more than six months, the whole principal becomes payable at once.

The act of February 28th, 1849, under which this association was formed, authorizes a company's investments to be made either in loans to its members or in the redemption of its shares, as the constitution of the particular company shall provide. The constitution of the association, in this case, does not provide for a redemption of shares. There is noth-

ing in its language, or in the language of the obligations it holds, to countenance the assumption erroneously made at the argument, that the nature of the transaction, in this case, was a redemption of shares. On the contrary, the shares are expressly recognized as still existing, redeemable by the member who borrows, though pledged to the company, as stated above. That the bonds in question represent the full value of their principal sums, is a conclusion in accordance with, and I think required by, the decision of this court, in the case of the same prosecutors, in 11 *Vroom* 192, where the whole amount held to be properly taxed included the same class of securities now under review, taken at their face valuation. This view of their taxable value leads to no injustice or hardship, either to the company or its individual members. Under the act of 1878, already referred to, the company's property is to be taxed like that of an individual. Its members, when debtors to the company, may claim deductions for their debts, making the process of taxation intelligible and feasible in its operation and just in its results, while the theory contended for by the prosecutors is unsound in itself, and would be extremely difficult to carry out, if not wholly impracticable, in the hands of the assessor.

It was insisted below, and in this court, that by resolution of the directors, prior to the assessment of the controverted tax, a credit of seventy per cent. had been ordered to be made on these bonds, which credit should now be allowed. It is a sufficient answer to this, that no credit was, in fact, made by the company on the bonds, nor is it perceived how, under the arrangement between the obligor and the company, the latter could lawfully appropriate and endorse on the bond the value of the stock held as collateral, unless the consent of the obligor and the consent of all the members to be affected by so doing had been previously obtained.

It was further insisted that the mortgage securities held by the company, and included in the total sum on which the assessment was laid, were not subject to taxation unless deductions therefor had been claimed by the mortgagors. To this

objection, it is properly said that the evidence shows that deductions were, to some extent, in fact, made on account of these mortgages, but in what or how many cases, does not distinctly appear.   The uncertainty attaching to it arises from the failure of the prosecutors to exhibit clearly and accurately to the assessor or to the commissioners of appeals, the true particulars of their property subject to taxation, and upon this ground, they are not entitled to relief in this court. *State, Cosset, pros.,* v. *Reimenschneider,* 10 *Vroom* 625.

The judgment below should be affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, DEPUE, DIXON, MAGIE, PARKER, VAN SYCKEL, CLEMENT, COLE, DODD—9.

*For reversal*—None.